## CHARLES DAEGLING

*v.*

## JOHN J. SCHWARTZ.

1. ASSUMPSIT—*when a proper form of action.* Where a contract under seal has afterwards been varied in its terms by a distinct simple contract, made upon a sufficient consideration, such substituted or new agreement must be the subject of an action of assumpsit, and not of an action of covenant.

2. Where a contract under seal contains a provision for the modification of the design of the work to be performed under it, but no provision for an extension of the time of performance on account of any such modification, and such modifications are made, and by parol agreement the time for the performance is extended in consideration thereof, such extension of time makes it a new contract upon which the action of assumpsit will lie.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Messrs. HERVEY, ANTHONY & GALT, for the appellant.

Mr. MELVILLE W. FULLER, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was assumpsit, in the Superior Court of Cook county, by John J. Schwartz, plaintiff, and against Charles Daegling, defendant, to recover damages suffered by plaintiff by reason of the careless manner in which defendant had suffered the brick walls of a building he had put up for the plaintiff to remain exposed to high winds, by reason of which the walls were prostrated, to the great injury of the plaintiff.

There was a trial by jury, and a verdict and judgment for the plaintiff, to reverse which the defendant appeals.

The questions are chiefly of fact, which seem to have been fully weighed and considered by the jury, under instructions from the court.

It appears that defendant was a brick mason in Chicago, and plaintiff the owner of a lot therein, at the corner of Madi-

son and State streets. He employed one Bauer, an architect, to prepare plans and specifications for a building to occupy this lot, of the dimensions following: Twenty-four feet front on State street by eighty feet on Madison, and four stories high, with pressed brick front. Appellant's bid for the work was accepted, and a written contract executed between the parties. After he had commenced the work, the length or depth of the building was increased to one hundred and twenty feet, and a stone front substituted for brick. Appellant made his calculations upon this extension, and undertook to do the work. By the specifications, the walls were to be in place, ready for the roof, by the fifteenth of September, and the building to be plastered by October first. It was tacitly understood and agreed, that by reason of this increase in the dimensions of the building and change of front from pressed brick to cut stone, the time for completion would necessarily be extended, and it was extended so that on the twenty-second day of October, at the time of the accident, the side walls—the long walls, were raised within about five feet of the required height—the rear end wall was about completed, lacking only topping out. The front stone wall was in to the top of the second story, or to the window sills of the third story, which were about eighteen inches below the upper joists. The height of the building in front was to be fifty-five feet, and at the rear fifty-one feet, and the walls to have a thickness of twelve inches.

On this day, October 22, 1866, such being the condition of the work, a severe storm—not greater, however, than other storms which had visited Chicago—occurred in the night of that day, and prostrated nearly all these walls except the rear wall, which had some protection from a large building adjacent to it on the west. The weather was wet at the time, and had been for some days previous. The walls had been laid rapidly, and the mortar had not time to set, and the building was very much exposed, there being a wide street on one side and another on the east end, whilst on the south there was no protection, so that the position of the structure was, in a great measure, isolated.

Under these circumstances, the common sense of a man of ordinary intelligence would have been advised that great precaution was necessary to protect these walls, at a season of the year when storms were to be expected in that latitude, for such is the proof.

We think the weight of evidence sustains the allegation of negligence in this, that the walls were not sufficiently braced, nor were they braced as directed by the architect on the Saturday afternoon of the day of the storm, and when there was sufficient time of the day remaining to put in the necessary bracing ordered by the architect. Besides this, failing to carry up the front stone wall *pari passu* with the side walls, leaving that wall much lower, depriving the three walls of the strength they would otherwise have had, was negligence, as the jury have found; and it is satisfactorily manifested in the fact that the rear wall, made of brick, stood the shock of the wind, coming as it did from the south-west, and thirty feet or more of the north and south walls, connected to the rear wall, remained uninjured, whilst these same walls, in the same proximity to the front end, were, with that end, prostrated.

It is urged, a wall twelve inches thick is not sufficient for a building so long and so high as this, but that is immaterial. Appellant was willing to contract to put up the walls, and he knew its exposure to storms while in the process of erection, was willing to take the risks, and should have protected his employer from loss by all the reasonable means in his power. This the jury have said he did not do, and we do not doubt the correctness of their conclusion.

A point is made by appellant, that the contract being under seal, was not proper evidence in this action, and the second instruction of appellee should not have been given.

That instruction is to the effect, if the time for the completion of the work was extended by the parties, either for a definite period or for a reasonable time beyond that fixed in the sealed contract in evidence, then the point that an improper form of action has been adopted was not tenable, and that such

agreement to extend the time may be implied from circumstances.

In answer to the argument in support of this view, appellant contends that it is of no force, inasmuch as in the written contract itself the right was secured to appellee to modify the design, and add to or diminish the contract price.

This is so, but it does not follow that for breach of this new agreement assumpsit will not lie. It is said by Chitty, where a contract under seal has afterwards been varied in its terms by a distinct simple contract, made upon a sufficient consideration, such substituted or new agreement must be the subject of an action of assumpsit and not of an action of covenant. 1 Ch. Pl. *105.

In the written contract, though in it there is named the right to modify the design, etc., there is no provision for an extension of time as consequent upon any modification. We think this so far makes it a new contract, for a breach of which assumpsit will lie. But, under the progressive nature of our laws and of judicial opinion, there really should not be any distinction between contracts under seal and in parol, and they are now abolished by our legislation.

As to the instructions as a series, and as embodying the law of the case, we have no fault to find with the manner in which the court disposed of them.

One other point is made by appellant as to the mode of ascertaining and proving the damages. He insists that question was, by the contract, left with the architect.

The proof of special damages was proper under the first count of the declaration, and the names of parties given to whom moneys were paid for work and materials destroyed. We do not find any objection was made on the trial to some of these payments. The payment to Sanders, the carpenter, who had put in the joists and done work upon the building as the walls progressed, was objected to, but no specific objection made. It was not then insisted that the architect, Bauer, should be called on this point. Had it been made, it was quite easy to call Bauer, who appears to have been a prominent wit-

ness and in attendance.    This point can not be made here now for the first time.

It appears to us, from considering the facts, that justice has been done, and no material error has occurred which should deprive appellee of his money.

The judgment is affirmed.

*Judgment affirmed.*